IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:12-CR-65-D-3

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER OF DETENTION PENDING** |
| | ) | **TRIAL** |
| DULCE MARY LOU CONTRERAS, | ) | |
| | ) | |
| Defendant. | ) | |

This case came before the court today for continuation of the hearing on the government's oral motion, pursuant to 18 U.S.C. § 3142(f), to detain defendant Dulce Mary Lou Contreras ("defendant") pending trial. (*See* 1st minute entry after D.E. 16). The initial session of the hearing was held on 21 May 2012 before Magistrate Judge David W. Daniel. (*See* D.E. 31). At that proceeding, the government presented the testimony of an officer with the Pitt County Sheriff's Office on a regional drug task force and a co-defendant (Stephen Douglas Dohm ("Dohm")) presented the testimony of a proposed third-party custodian. Defendant moved orally for a continuance of further proceedings as to her to enable her to arrange for travel of a possible third-party custodian to North Carolina, and the court allowed the motion. (*See* 2nd and 3rd Minute Entries after D.E. 32). The continuation of the hearing was set for today by order entered 23 May 2012 (D.E. 37), although the location was subsequently changed from Greenville to Raleigh and the presiding judicial officer was changed from Judge Daniel to the undersigned Magistrate Judge because of Judge Daniel's unavailability (*see* Notice after D.E. 41).[1]

---

[1] As stated on the record, the undersigned reviewed carefully the audio recording of the proceeding on 21 May 2012, as well as the pretrial services report (D.E. 28).

At today's proceedings, defendant presented the testimony of two proposed third-party custodians, one of her sisters and her mother, both of whom reside in San Benito, Texas. The government presented no additional evidence. After careful consideration pursuant to 18 U.S.C. § 3142(g) of the credible information and argument submitted, and based on the findings and reasons stated below and in open court, the court finds by a preponderance of the evidence that there is no condition or combination of conditions that will reasonably assure defendant's appearance as required, and by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community before trial if defendant is released. The government's motion is therefore GRANTED.

## Background

Defendant was charged in count two of a two-count indictment, filed on 8 May 2012 (D.E. 1), with knowingly and intentionally possessing with the intent to distribute 500 grams or more of cocaine, and aiding and abetting the same, on 14 March 2012, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The evidence presented at the hearing showed that the charges arise from an ongoing investigation into a conspiracy for the trafficking of drugs into the Greenville, North Carolina area from Florida, which included use of a confidential source, an undercover officer, and recorded telephone calls with conspirators.

The specific events prompting the charges against defendant involved her traveling from the Tampa, Florida area with her brother, co-defendant David Diaz, Jr. ("Diaz"), in her Chevrolet Suburban to Greenville on 13 March 2012. Defendant, who was living in San Benito, was in Florida for a family reunion. Her five minor children, one of whom has special needs, were also in Florida for the reunion. Her husband was and remains in state prison in Texas. Diaz was

travelling to Greenville to complete the sale of five kilograms of cocaine to a confidential source that he and others (not shown to include defendant) had previously arranged. Diaz was responsible for having the cocaine, which was acquired from sources in Mexico, transported from the Tampa area to Greenville for the sale.

On the evening of 13 March 2012, Diaz met with the confidential source, an undercover officer, and two other co-defendants (Dohm and Timmy Dean Hess) at a Hooter's restaurant in Greenville. Defendant was present in the restaurant, but she sat at a different table a significant distance from the table where the meeting occurred. After the meeting, defendant and Diaz went to Grimesland, where the stash house used by the co-conspirators was located and where the delivery of the cocaine was to occur the following morning. They then returned to a hotel in Greenville.

Around 6:00 a.m. on 14 March 2012, defendant and Diaz travelled to the hotel at which the two other co-defendants had stayed the night. The group then travelled toward Grimesland. Defendant and one of the other co-defendants (Dohm) rode in her Suburban, and co-defendant Diaz and the other co-defendant (Hess) rode in a Blazer. Police stopped the vehicles. They found about five kilograms of cocaine in the Blazer. All four were arrested, as was the remaining co-defendant, Victor Andrade-Cantu ("Andrade-Cantu"), who was in the Tampa area. After his arrest, Andrade-Cantu gave a statement to authorities about the sale and related drug-trafficking activities.

## Discussion

Given the nature of the charges, the rebuttable presumption of detention in 18 U.S.C. § 3142(e)(3) applies, and the court has considered it, although defendant proffered sufficient evidence to shift the burden of production to the government. In addition to the presumption, the

principal findings and reasons underlying the court's determination that detention is required include the following: evidence showing that the government has a strong enough case to obtain a conviction, including the evidence reviewed above; the drug-related nature of the offense charged; the circumstances of the offense charged, including the amount of drugs involved, the extended interstate travel involved, and the recency of the offense; defendant's criminal record, including two felony convictions and violation of pretrial diversion and probation in connection with those convictions; the danger of continued offense conduct by defendant if released; defendant's lack of any ties to this district; the potential sentence defendant faces if convicted, giving her an incentive to flee; the unsuitability of the proposed third-party custodial arrangement, notwithstanding the apparent qualification of the proposed custodians, due to the extent of the risk of flight defendant presents, the distance of the proposed custodial home from this district (requiring extensive travel for court appearances with the associated risk of flight), the proximity of the proposed custodial home to the Mexican border (about a half hour's drive), defendant's familiarity with the border area of Mexico (she travels there at least monthly, although she is an American citizen raised in the United States), and defendant's having family members in Mexico with whom she and others relatives meet from time to time in the border area of Mexico; and the other findings and reasons stated in open court.

The court considered carefully the evidence offered in support of defendant's release, but finds that it is offset by the evidence favoring detention. For example, defendant's parents offered to put up their house as collateral for a bond. The court does not believe, though, that the risk of her parents losing their home could reasonably be expected to deter defendant from fleeing. After all, she put her five children in jeopardy of not having either parent to care for them by participating in the alleged offense conduct. If her own children's welfare did not deter

4

her, it is doubtful that her parents' would. Given the age of her parents, the court is reluctant to put them in the position of possibly losing their home. Defendant had previously put the children at risk of losing her care when she participated in her prior felony conduct in 2006. The record shows that defendant's parents and other family members will be a position to care for her children during her detention.

The court is aware that no direct evidence was presented that defendant knew about the planned sale of the cocaine or its presence in the Blazer. Diaz has apparently denied that she knew it was there. However, consistent with the grand jury's indictment of her, there is sufficient circumstantial evidence that she had the requisite knowledge to support a conviction (*e.g.*, departure from family members, including her own children, gathering for a family reunion to make an extended trip, obviously not of a tourist nature, to a state with which neither she nor Diaz appear to have any significant ties; her sitting apart from the others at the restaurant; the trip to Grimesland after leaving the restaurant; the travel toward Grimesland the following morning). Defendant did not, of course, have to know such details as the specific quantity of the cocaine involved to be convicted.

## Conclusion

IT IS THEREFORE ORDERED that defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver

5

Case 4:12-cr-00065-D   Document 45   Filed 06/06/12   Page 5 of 6

defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

This, the 5th day of June 2012.

_____
James E. Gates
United States Magistrate Judge